Richard S. KOHN and Brenda F. Kohn

v.

Deane DAVIS, Governor of the State of Vermont, Thomas Hayes, Lt. Governor of the State of Vermont, Richard Thomas, Secretary of State of the State of Vermont, James Jeffords, Attorney General of the State of Vermont, John Burgess, Speaker of the House of Representatives, Maurice Chandler, Chairman of the Board of Civil Authority of the Town of Peacham, Vermont, Louis Lamoureux, Theodore Farrow, George Meech, Francis Berwick, John Keenan and Gilbert Randall, members of the Board of Civil Authority of the Town of Peacham, Vermont.

Civ. A. No. 6047.

United States District Court,
D. Vermont.

Oct. 26, 1970.

Richard S. Kohn, pro se, and for plaintiff Brenda F. Kohn.

Martin K. Miller, Asst. Atty. Gen., Montpelier, Vt., for defendants Deane Davis, Thomas Hayes, Richard Thomas, James Jeffords and John Burgess.

Kyle T. Brown, Jr., Witters & Brown, St. Johnsbury, Vt., for defendants Maurice Chandler, Louis Lamoureux, Theodore Farrow, George Meech, Francis Berwick, John Keenan and Gilbert Randall.

Before WATERMAN, Circuit Judge and LEDDY and OAKES, District Judges.

LEDDY, District Judge.

This is an action for injunctive and declaratory relief brought pursuant to the provisions of 42 U.S.C.A. § 1983. The jurisdiction of the court was invoked under 28 U.S.C.A. § 1343(3), and this court has jurisdiction of the matter. Since injunctive relief restraining the operation of Vermont Statutes and offi-

cers of the State of Vermont and of the Town of Peacham is sought, a statutory three-judge district court was convened in accordance with 28 U.S.C.A. § 2284.

## I. STATEMENT OF FACTS

The following facts were alleged by plaintiffs and conceded by defendants. Plaintiff, Richard S. Kohn, is 28 years old, a citizen of the United States and a resident and domiciliary of the State of Vermont since June 28, 1970, when he moved from Rhode Island to the Town of Peacham, Vermont, with the intention of making Vermont his residence. He is a lawyer, employed, and he has taken and passed the bar examination administered by the State of Vermont. He is now certified to practice in the State Courts of Vermont.

Brenda F. Kohn, spouse of plaintiff Richard Kohn, is also 28 years old and is a citizen of the United States. She was born in Hyde Park, Vermont, and after living in Rhode Island for a time, she moved to the Town of Peacham, Vermont with her husband on June 28, 1970, with intent to make Vermont her residence. She is employed as a teacher at Lyndon State College, Lyndonville, Vermont.

On September 4, 1970, plaintiffs appeared before the Town of Peacham Board of Civil Authority at its regularly scheduled meeting to revise the voter checklist in order that plaintiffs' names might be added to the list of eligible voters for the primary and general elections to be held on September 8 and November 3, 1970, respectively. Under Vermont law, the taking of the Freeman's Oath is one of the conditions precedent to the right to vote under Chapter II, § 36 of the Vermont Constitution. Both plaintiffs were administered the Freeman's Oath by the Peacham Board of Civil Authority. However, the Board refused to add the plaintiffs to the list of eligible voters on the basis that plaintiffs did not satisfy the one year residency requirement required by Vermont law.

## II. APPLICABLE VERMONT LAW

On the question here presented, the Constitution of Vermont and the validity of two Vermont Statutes must be tested against the constitutional guarantees of the United States.

Chapter II, § 34 of the Vermont Constitution which is of venerable origin, since its source is the Vermont Constitution of 1777, provides that to enjoy the privileges of a freeman, including the right to vote, one year's residence in Vermont is required.

SECTION 34. Every person of the full age of twenty-one years, who is a natural born citizen of this or some one of the United States or who has been naturalized agreeably to the Acts of Congress, having resided in this state for the space of one whole year next before the election of representatives, and who is of a quiet and peaceable behavior, and will take the following oath or affirmation, shall be entitled to all the privileges of a freeman of this state:

*You solemnly swear* (or affirm) *that whenever you give your vote or suffrage, touching any matter that concerns the State of Vermont, you will do it so as in your conscience you shall judge will most conduce to the best good of the same, as established by the Constitution, without fear or favor of any person* (emphasis in original).

In addition, 17 V.S.A. § 62 (1957) requires a one year residency in Vermont in order to vote for state officers and further requires as part of the one year, a ninety day residence in a town in order to vote for representatives to the general assembly and justices.

§ 62. *Voters at general election*

Every citizen twenty-one years of age or more, having resided in the state one year next preceding a general election, who has taken the freeman's oath as provided in the constitution, shall have the right to vote at such election for the officers to be elected

thereat in the town where he resides on the day of such election; but he shall not vote for representatives to the general assembly or justices at such election, unless he has resided during the ninety days next preceding such election in the town which is his residence on the day of such election.

Lastly, 17 V.S.A. § 63 requires all of the above for a Vermont citizen who leaves the state and who after residing elsewhere returns.

### § 63. *Removal; nonresidence*

A citizen, after removing from and residing without the state, shall not vote at such election, until he has resided in this state one year preceding the day of such election and taken the oath of allegiance to the state, the oath to support the Constitution of the United States and the freeman's oath.

## III. ISSUES PRESENTED

Plaintiffs have questioned and placed in issue only the one year durational residency requirement set down by Vermont law. Plaintiffs claim that the one year durational residency requirement abridges their right to equal protection of the laws secured under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and interferes with their right to interstate travel. Accordingly, we confront only the validity of the one year durational residency requirement of the State of Vermont as a precondition to the exercise of plaintiffs' right to vote.

The court is not unmindful of the fact that we encounter a legal issue which is difficult of resolution. It has long been established that the right is reserved to the States " * * * to determine the conditions under which the right of suffrage may be exercised * * *" (citations omitted). Lassiter v. Northampton County Board of Elections, 360 U.S. 45, 50, 79 S.Ct. 985, 989, 3 L.Ed.2d 1072 (1959). However, the individual must also be protected and it is settled law that

* * * once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment.

Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 665, 86 S.Ct. 1079, 1081, 16 L.Ed.2d 169 (1966).

## IV. EQUAL PROTECTION

Governmental classifications which create a disparity in treatment are the foundation of all violations of the equal protection clause. The applicable Vermont laws, all of which require a one year durational residency, create a discriminatory treatment differential in that Vermonters who have resided in the State for one year can vote while those who have not resided in the State for one year cannot. Thus, a discriminatory classification results based solely upon duration of residence in Vermont. However, before this classification and its necessary effects rise to the level of an equal protection violation, it must be shown that the discriminatory classification is unjustified in terms of governmental purpose under the applicable standard of review.

### (a) *Standard of Review*

At least two standards have emerged for testing the constitutional validity of a state statute on equal protection grounds. See generally, Note, Developments in the Law-Equal Protection, 82 Harv.L.Rev. 1065, 1077–1132 (1969). The first standard of review, which seems to have the longest history, looks simply to the reasonableness of the classification in light of its legislative purposes. Judged by this standard, "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). See also Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

The second standard defines a more active judicial posture and under it, a discriminatory classification can be upheld only when it is necessary in the service of some compelling state interest. It is clear that in the absence of some fundamental and constitutionally protected right the "active" or "compelling state interest" test will not apply. See McDonald v. Board of Election, 394 U.S. 802, 806–807, 89 S.Ct. 1404, 22 L. Ed.2d 739 (1969). In *McDonald,* the Supreme Court refused to apply the more stringent "compelling state interest" test because it was not shown that the statute had

> * * * an impact on appellants' ability to exercise *the fundamental right to vote.* It is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots. 394 U.S. at 807, 89 S.Ct. at 1408 (emphasis added).

■ Indeed, whenever the Supreme Court has characterized a right as "fundamental", the compelling state interest standard is applied. Interests found to be fundamental and worthy of application of the compelling state interest test are the right to travel, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); the right of procreation, Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); rights involving criminal procedure, Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L. Ed. 891 (1956); and, most importantly for our purposes here, the right to vote. Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Kramer v. Union Free School Dist., 395 U.S. 621, 89 S.Ct. 1886, 23 L. Ed.2d 583 (1969); Harper v. Virginia Bd. of Elections, 383 U.S. 663, 86 S. Ct. 1079, 16 L.Ed.2d 169 (1966); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The Supreme Court this year has dispelled any possible lingering doubts concerning the standard to be applied to state voting statutes contested on equal protection grounds. In Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970) the Supreme Court used this language:

> And before that right [to vote] can be restricted, the purpose of the restriction and the assertedly overriding interests served by it must meet close constitutional scrutiny. 398 U.S. at 422, 90 S.Ct. at 1755.

And in City of Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970) the Court used this test: "* * * overriding interest * * * which the State is entitled to recognize." 399 U.S. at 209, 90 S.Ct. at 1994.

Defendants place much emphasis upon the three-judge court case of Drueding v. Devlin, 234 F.Supp. 721 (D.Md.1964), aff'd per curiam 380 U.S. 125, 85 S.Ct. 807, 13 L.Ed.2d 792 (1965). There, Maryland's one year durational residency requirement was upheld. However, the *Drueding* Court applied the traditional rational basis test instead of the compelling state interest test now consistently applied to voting rights cases. In addition, the Court in *Drueding,* while holding against plaintiffs on the rational basis test, noted that

> [p]laintiffs herein may take some comfort; however, in the fact that they have set in motion the procedures for what appears to be a desirable reform. 234 F.Supp. at 725.

■ Recent three-judge court cases involving durational residency requirements as a precondition to exercising the right to vote state that *Drueding* is "no longer viable law." Burg v. Canniffe, 315 F.Supp. 380 (D.Mass.1970); Blumstein v. Ellington (M.D.Tenn. Aug. 31, 1970).[1] These courts also reached the same decision which we now make, that is, the compelling state inter-

1. See Hall v. Beals, 396 U.S. 45, 52, 90 S.Ct. 200, 203, 24 L.Ed.2d 214, where Mr. Justice Marshall said in his dissenting opinion, "It seems to me clear that *Drueding* is not good law today."

est test applies in considering whether a durational residency requirement for voting purposes is repugnant to the constitution.

## V. BURDEN OF PROOF

Given the standard of review, upon whom does the burden rest to demonstrate compelling state interest. Defendants rely strongly upon McGowan v. Maryland, *supra*, contending that:

> [s]tate legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. 366 U.S. at 425–426, 81 S.Ct. at 1105.

The *McGowan* case did not center around a right characterized as fundamental, however. *McGowan* posed an economic issue—that is whether a Maryland "Blue Law" regarding Sunday closing as to commercial enterprises violated the equal protection clause.

On the other hand, a case involving a condition precedent (owning or leasing real property or having children in school) to the exercise of the right to vote has reached a contrary result. In Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), the Supreme Court ruled:

> * * * when we are reviewing statutes which deny some residents the right to vote, *the general presumption of constitutionality afforded state statutes and the traditional approval given state classifications if the Court can conceive of a "rational basis" for the distinctions made are not applicable* (emphasis added). The presumption of constitutionality and the approval given "rational" classifications in other types of enactments are based on an assumption that the institutions of state government are structured so as to represent fairly all the people. However, when the challenge to the statute is in effect a challenge of this basic assumption, the assumption can no longer serve as the basis for presuming constitutionality. 395

U.S. at 627–628, 89 S.Ct. at 1890 (citations omitted).

The case at bar like *Kramer*, involves a condition precedent to the exercise of the right to vote. Here the condition precedent is a durational residence of one year. Therefore, we hold that there is no presumption of constitutionality in defendants' favor; that defendants should assume the burden of proof since they are the only ones who can show compelling state interest; and that defendants, in fact, have the burden to show compelling state interest to justify their discriminatory classification.

## VI. THE RIGHT TO TRAVEL

Like the right to vote, the Supreme Court held in Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), that the right to travel interstate is a fundamental right, 394 U.S. at 630, 89 S.Ct. at 1329, thus casting on the defendants the burden of establishing a compelling state interest.

> * * * [M]oving from State to State * * * [involves] * * * exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional. 394 U.S. at 634, 89 S.Ct. at 1331 (emphasis in original).

There can be little dispute that Vermont law requiring a one year durational residency before voter eligibility is conferred penalizes recent arrivals from other states who have not fulfilled the required residency period even if they have in fact become bona fide residents. This affects the rights of recent arrivals adversely and hampers their right to travel interstate. We hold that defendants must also justify this restriction by the compelling state interest standard.

## VII. JUSTIFICATION AND EVIDENCE PRESENTED

The defendants attempt to justify their discriminatory classification as

to voter eligibility by a plea of administrative hardship. The defendants presented the Vermont Assistant Secretary of State in charge of voting procedures as their only witness. The gist of his testimony was that administratively, it would be difficult to make allowance for plaintiffs and others similarly situated in the forthcoming November 3, 1970, general election. The evidence presented does not demonstrate any serious administrative difficulty. Two hundred thousand ballots have been printed for each of the state offices in 1970, and the witness stated that he could not remember any off-year election when over 125,000 votes were cast for governor.[2] Also, in the printing and distribution of ballots, a cushion of at least 10 per cent is provided for all offices. Upon inquiry by counsel as to how many ballots would have to be printed to accommodate plaintiffs and all others similarly situated, the witness testified that 2500 of each ballot would be required, a total of 7500 in all. Lastly, defendants through this witness presented evidence showing that average population increases per year were around 6,000. From this testimony, it does not appear that any substantial administrative hardship would result. In fact, it does not appear that any hardship whatsoever will accrue to the disadvantage of the defendants in this case since there is involved here only the two votes sought to be cast by the two plaintiffs. Any further petition with respect to the issue in this case brought by an individual either on his own behalf or as a class action will be held in abeyance until after the general election to be held on November 3, 1970. The decision herein made is restricted to the plaintiffs, Richard S. Kohn and Brenda F. Kohn. The Legislature of Vermont will have met before another general election and will have an opportunity to review present statutory residency requirements.

Even if substantial administrative hardship amounted to a compelling state interest, and we do not say that it does,[3] defendants have not proved a case of such hardship. See generally, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The defendants offered no other evidence to justify a finding of compelling state interest, although invited by the Court to do so.

■ In oral argument defendants took the position that a waiting period of one year for new residents was reasonable to ensure that the voters of Vermont are well informed on all pertinent issues. In this connection, it is sufficient to point out that the Constitution of Vermont was first enacted in the days when Vermont was a republic and the statutory provisions in sections 62 and 63 of Title 17 date back to 1793 and 1812 respectively. It goes without saying that conditions have changed drastically since these early dates, particularly with respect to education, communications, transportation, dissemination of information through mass media such as newspapers, magazines, radio and television, all of which afford the opportunity to see, hear and read about the candidates for various offices and to know their positions with respect to the issues involved in each election. Moreover, defendants introduced no evidence demonstrating that a one year residency promotes an informed and interested electorate. Cf. Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969).

2. However, the Vermont Legislative Directory and State Manual published under authority shows that from 1920, when women first voted in Vermont to 1966, the vote for governor in off-year elections exceeded 125,000 votes only in the year 1934 when the total votes cast for governor were 128,565 and in 1966 when the governorship vote was 136,262.

3. See Carrington v. Rash, 380 U.S. 89, 96, 85 S.Ct. 775, 780, 13 L.Ed.2d 675 (1965) where the Supreme Court said " * * * that states may not casually deprive a class of individuals of the vote because of some remote administrative benefit to the State." (citations omitted).

The plaintiffs called as a witness the Clerk of the Voter Registration Board of the City of Burlington. Of 16,936 eligible voters in Burlington at the 1970 primary election, only one voter was challenged to ascertain whether such voter was in fact qualified under Vermont law. It does not appear whether the challenge was successful.

By statute in Vermont, the Board of Civil Authority may not add any voters to their checklist within the 36 hours immediately before the election.[4] Ostensibly, this reflects a legislative policy of ensuring time to update the voter checklist and to ensure time for the mechanics of ascertaining whether a prospective voter is in fact a bona fide resident and otherwise qualified.

There is no question that Vermont may require a person to be a bona fide resident before conferring the right to vote. What is proscribed by the Constitution of the United States is a treatment differential promoted by the state in limiting the rights of a bona fide resident simply because he is a recent arrival. Mr. Justice Marshall in his dissenting opinion in Hall v. Beals, 396 U. S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969),[5] stated in reference to bona fide residency:

> * * * this Court has often reaffirmed the power of the States to require their voters to be bona fide residents. But this does not justify or explain the exclusion from the franchise of persons, not because their bona fide residency is questioned, but

because they are recent rather than longtime residents. 396 U.S. at 53, 90 S.Ct. at 204 (citations omitted).

This line of reasoning promotes the principle that while duration of residency may be one of many criteria to establish a bona fide residency, it is legal fiction to make a one year residency equivalent to bona fide residency for voting purposes only. As one three-judge court has put it:

> In our highly mobile society, one who has lived in a particular locale for one year may be firmly rooted in the community or he may be ready to move on tomorrow. Keenan v. Board of Law Examiners of North Carolina, 317 F. Supp. 1350 (E.D.N.C.1970).

It is conceded that the plaintiffs in the case at bar are bona fide residents who intend to remain in the State of Vermont. Yet, defendants, would have us uphold laws that would exclude plaintiffs from the electorate with no showing of compelling state interest other than some minor administrative difficulty all because of the single fact that plaintiffs have not yet complied with the heretofore inviolate one year residency requirement. The Supreme Court pointed out in Carrington v. Rash, *supra*, that if plaintiffs,

> * * * are in fact residents, with the intention of making [Vermont] their home indefinitely, they, as all other qualified residents, have a right to an equal opportunity for political representation. 380 U.S. at 94, 85 S.Ct. at 779.

---

4. 17 V.S.A. § 204 states in its entirety: Such boards shall meet at the time and place appointed and remain in session a reasonable time. It may adjourn from day to day but the check list shall not be closed until twelve o'clock at noon of the Saturday preceding the day on which the list is to be used, if the general election at which it is to be used is held on Tuesday.
In no case shall there be a hearing by such board to revise a check list or alterations made in the same within thirty-six hours of the time appointed for the general election at which such check list is to be used.

5. In Hall v. Beals it is to be noted that the residency requirement for voting in Colorado at the time the complaint was filed was a six month period. Thereafter, and before the opinion in *Hall*, the Colorado Legislature reduced the residency requirement from six to two months and the majority opinion held that the issues raised were mooted.

## VIII. CONCLUSIONS

The trend in the law today is unmistakably clear and rests upon sound legal foundations. Durational residency requirements as a precondition to voting have fallen into judicial disfavor as indicated by the dissent of Mr. Justice Marshall in Hall v. Beals, *supra*, and in the three-judge court cases of Burg v. Canniffe, *supra*, and Blumstein v. Ellington, *supra*.

It is the judgment of this Court that the one year durational residency required by Chapter II, § 34 of the Vermont Constitution and 17 V.S.A. §§ 62–63 as a condition precedent to the right to vote in Vermont is an unconstitutional limitation on two fundamental rights, the right to vote and the right to travel interstate. We further hold that standard of review applicable to the classification mandated by these Vermont laws is that of compelling state interest. Lastly, we hold that the burden of establishing justification by compelling state interest is on the defendants. This burden has not been sustained.

### ORDER

Accordingly, for the reasons above set forth, we order that Chapter II, § 34 of the Vermont Constitution and 17 V.S.A. §§ 62–63 are unconstitutional, only in so far as they require a one year durational residency as a condition precedent to the right to vote in Vermont. We find that plaintiffs are and have been bona fide residents of Vermont since June 28, 1970. We further order that judgment be entered for the plaintiffs and that defendants shall cause the entry of plaintiffs' names upon the eligible voter checklist of the Town of Peacham not later than the last meeting of the Board of Civil Authority of the Town of Peacham, Vermont, for updating the checklist for the next general election and that plaintiffs be allowed to vote at the general election to be held November 3, 1970. Plaintiffs' votes are to be counted together with all other valid votes cast at said election.