Edwina **SHIVELHOOD** et al.

v.

Deane C. **DAVIS**, Governor of the State of Vermont, et al.

**Civ. A. No. 6479.**

United States District Court, D. Vermont.

Dec. 30, 1971.

---

---

Karen McAndrew, American Civil Liberties Union of Vermont, Burlington, Vt., for plaintiffs.

Martin Miller, Asst. Atty. Gen., State of Vermont, Montpelier, Vt., for defendants Deane C. Davis, Governor of the State of Vermont and James Jeffords, Atty. Gen. of the State of Vermont.

Chester S. Ketcham and Wynn Underwood, Underwood, Lynch & Ketcham, Middlebury, Vt., for all remaining defendants.

## OPINION AND ORDER

LEDDY, Chief Judge.

### I

Five students at Middlebury College, Middlebury, Vermont, brought this action against the Town Clerk and the members of the Board of Civil Authority of the Town of Middlebury and the Governor and Attorney General of the State of Vermont, alleging deprivation of their voting rights. The action was dismissed as to the Governor of Vermont on December 27, 1971, and was dismissed as to the Attorney General of Vermont on December 29, 1971, for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6).

■ The named plaintiffs originally sought to maintain this action on behalf of "all students who attend institutions of learning within the State of Vermont, and who wish to register and vote in the communities in which they attend school." We think that this suit may properly be maintained as a class action pursuant to Fed.R.Civ.P. 23(b)(1)(A) and 23(b)(2). However, it is our opinion, and the plaintiffs' attorney now concedes, that the class should be limited to those students physically residing in the Town of Middlebury who desire to register and vote therein. Only for a class so limited are "questions of law or fact common to the class" raised by the complaint. Fed.R.Civ.P. 23(a)(2).

■ This class definition is still quite broad. We do not narrow it further at the present time because this broad class definition may be necessary to insure the efficacy of prospective injunctive relief relating to procedures to be followed by the Middlebury Board of Civil Authority in examining voter applications. Although some of the relief which may be granted may not apply to all members of the class, Rule 23 provides sufficient flexibility to enable us to limit various types of relief to various class members.

The plaintiffs have requested a preliminary injunction permitting them to vote in the special election to be held on January 7, 1972, for the purpose of electing a United States Senator and Congressman and for voting on a local charter question. Moreover, the regular town meeting is scheduled for early March and it is not anticipated that a final order will be entered before this meeting. The plaintiffs have therefore requested that the preliminary injunction continue in force until a final disposition of the case. An evidentiary hearing on plaintiffs' request for preliminary injunction was held on December 27 and 29, 1971, all parties being represented by counsel.

■ Any decision as to the propriety of a preliminary injunction does not reflect our opinion on the merits of final relief. Nevertheless, the plaintiffs have demonstrated at the hearing on their request for a preliminary injunction that the Middlebury Board of Civil Authority

has improperly interpreted the standards of law by which it was to evaluate the plaintiffs' applications for voter registration. In light of this, and recognizing the fundamental nature of the franchise and the fact that restrictions thereon are subject to the closest scrutiny, we think that some form of preliminary relief is appropriate. See, e.g., Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969).

Because domicile is largely a question of fact to be ascertained by the Middlebury Board of Civil Authority, it would be improper for this Court to review the applications of each class member and decide who may or may not be allowed to vote at the forthcoming election. However, because we have before us considerable evidence concerning the five named plaintiffs, we think that at least those of the named plaintiffs who, in all probability, would have been registered if proper legal standards had been observed should be allowed to vote at the January 7, 1972, election. Moreover, we will order that the Board of Civil Authority reconsider all applications of members of the class prior to the March town meeting.

## II

■ 17 V.S.A. § 64(a)(Supp.1971) requires that the Middlebury Board of Civil Authority in determining domicile must determine whether an individual "is domiciled [in Middlebury] as his permanent dwelling place, with the intention of remaining there indefinitely, or returning there if absent from it." The Board of Civil Authority has interpreted this provision as requiring that applicants intend to remain in Middlebury permanently. We think this is error, and that the statute must be construed as requiring only an intent to remain in Middlebury "indefinitely." Thus, an individual's knowledge that he will graduate from an institution of learning and may possibly leave Middlebury after his graduation does not of itself preclude him from obtaining domicile in Middle-

bury if he has no definite plans to leave the Town and move elsewhere. Similarly, an individual's present intention to attend graduate school outside of Middlebury does not of itself preclude him from obtaining domicile in Middlebury if he presently intends to return to Middlebury after graduation from graduate school.

■ 17 V.S.A. § 64(b)(Supp.1971) states that the filing of "a written statement under oath, in a form prescribed by the secretary of state, certifying as to the period immediately preceding such filing during which he has continuously resided in that town" constitutes "prima facie evidence of the commencement or period of such person's residence in a municipality or voting district, and in the state, for all purposes." This statement is subject to the penalties of perjury, and a knowingly false statement is subject to a $5,000.00 fine. Accordingly, the Board of Civil Authority is required to place on the voter check list any member of the class who files such a statement unless the Board has sufficient evidence which would serve to rebut such a statement.

The quantum of evidence required to rebut the prima facie evidence of an applicant's oath is not capable of precise determination. The Board of Civil Authority must honestly and fairly evaluate all the evidence which it has available in order to determine whether this evidence is sufficient to overcome the applicant's sworn statement. In making this evaluation, the Board must bear in mind that election laws are to be liberally construed and that a very heavy burden of proof must be met if persons are to be disenfranchised. Cf. Kohn v. Davis, 320 F.Supp. 246 (D.Vt.1970).

Because, as previously noted, domicile is largely a question of fact for the Board's determination, this Court will not presently attempt to set forth exhaustive guidelines for the determination of domicile. Nevertheless, in order to protect the rights of the plaintiffs, we feel that it is necessary to set forth certain factors which cannot alone be

conclusive on the issue of domicile. By listing these factors we certainly do not imply that the presence of any factors other than these will suffice to show that bona fide domicile does not exist.

The fact that a student lives in a dormitory, is unmarried, is supported financially by his parents who live elsewhere, would be considered a minor in the state in which his parents live and occasionally visits his parents, even if all these factors occur together, is not alone sufficient to preclude domicile in the town in which the student attends school, although these factors may be considered together with other relevant evidence. Furthermore, although we do not imply that the Board has considered them to be relevant, we think it important to note that such factors as the lack of a Vermont driver's license or car registration are irrelevant unless the individual has a license or registration in another state. Similarly, in light of the Twenty-fourth Amendment to the United States Constitution, the fact that an individual has not paid a Vermont poll tax is irrelevant unless the individual has paid a poll tax elsewhere.

42 U.S.C. § 1971(a) states:

(2) No person acting under color of law shall—

(A) in determining whether any individual is qualified under State law or laws to vote in any election, apply any standard, practice, or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote . . ..

Thus, the Board of Civil Authority must not require students to fill out a supplemental questionnaire involving questions concerning their domicile unless all applicants are required to complete the same questionnaire. Moreover, the Board of Civil Authority must use its best efforts to insure that any questionnaire is equally relevant to all applicants and not designed only to apply to student applicants.

In conclusion, we think it appropriate to note that the Middlebury Board of Civil Authority, according to the evidence now available to this Court, has apparently attempted to apply the law conscientiously as it understood it. However, it is clear that the Board has applied erroneous standards. We have, in this opinion, attempted to provide some guidelines for the Board. We stress, however, that the examples we have listed do not provide an exhaustive list and that we have stated only those factors that the Board may not consider conclusive and have not attempted to indicate those factors which we think would justify a Board of Civil Authority in determining that an applicant was not domiciled in a given town. At this preliminary stage of the litigation, we deem it inappropriate to provide further guidelines.

We also think it important to address ourselves to the argument that college students very seldom have a close nexus with the communities in which they reside while attending school and are more transitory as a group than many other segments of the population. In Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 16 L.Ed.2d 675 (1965), similar arguments were raised before the United States Supreme Court with regard to a provision of the Texas constitution barring military personnel from obtaining a domicile in that state:

It is argued that this absolute denial of the vote to servicemen like the petitioner fulfills two purposes. First, the State says it has a legitimate interest in immunizing its elections from the concentrated balloting of military personnel, whose collective voice may overwhelm a small local civilian community. Secondly, the State says it has a valid interest in protecting the franchise from infiltration by transients, and it can reasonably assume that those servicemen who fall

within the constitutional exclusion will be within the State for only a short period of time.

380 U.S. at 93, 85 S.Ct. at 778. Rejecting these arguments, the Supreme Court stated:

> But if [military personnel] are in fact residents, with the intention of making Texas their home indefinitely, they, as all other qualified residents, have a right to an equal opportunity for political representation . . . . "Fencing out" from the franchise a sector of the population because of the way they may vote is constitutionally impermissible.

380 U.S. at 94, 85 S.Ct. at 779 (citations omitted).

Times have changed; mobility has greatly increased. It is likely that fewer students will return to settle permanently in the communities in which they were raised than was once the case. Some students have few ties with the community in which their parents live. They may care little about, and because of lack of media availability have even less ability to discover, the political issues in their parents' communities, but may be well aware of and concerned about the political issues in the communities in which they reside while attending school. Students, as well as other members of the population, are directly and importantly affected by the legislators, executive officials and laws that govern the communities in which they reside while attending school. Thus, those student who have their bona fide domiciles in the communities in which they reside while attending school, and thus are more closely tied to these communities than they are to the communities in which their parents live, should be permitted to vote in their school communities. If the Middlebury Board of Civil Authority continues its conscientious efforts to determine the bona fide domicile of students physically residing in Middlebury, this Court feels certain that the Board will have made an important contribution toward insuring that the fundamental voting rights of all our citizens are properly protected.

## III

Accordingly, it is hereby ordered:

That the above action be permitted to proceed as a class action pursuant to Fed.R.Civ.P. 23(b)(1)(A) and 23(b)(2), that the named plaintiffs be permitted to maintain this action on behalf of all students physically residing in the Town of Middlebury who desire to register and vote therein, and that those defendants who are members of the Middlebury Board of Civil Authority be, and the same hereby are, preliminarily enjoined as follows:

## PRELIMINARY INJUNCTION

1. The members of the Middlebury Board of Civil Authority are hereby preliminarily enjoined from refusing to place the names of Edwina Shivelhood, Richard Brooke Roberts, Lawrence M. Becerra, and John Phillip Abbott on the voter check list for the Town of Middlebury by the date the check list is to be closed for the January 7, 1972, special election.

2. The members of the Middlebury Board of Civil Authority are hereby preliminarily enjoined from refusing to place on the voter check list for the Town of Middlebury the names of all those students physically residing in Middlebury whose applications to be placed on the check list were denied by the Board at its meeting of October 20, 1971, or thereafter, unless the applications of these students are reconsidered, in light of the accompanying opinion, at a meeting or meetings of the Board at which the applicant is permitted to attend and present evidence, in time for the applicants to be placed on the check list for the March town meeting, if found qualified.