## Coleman v. Coleman.

(Decided March 25, 1932.)

280

A. F. CHILDERS for appellant.

STRATTON & STEPHENSON and J. A. RUNYON for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming.

Appellant and appellee were opposing candidates for the office of subdistrict trustee in district No. 152 of Pike county at the last school election. Each received an equal number of votes. Appellee filed his petition contesting the election of appellant and he filed a counter contest. The issues were made up, proof was heard, and on final hearing the circuit court entered judgment in favor of the plaintiff. The defendant appeals.

The court struck off two votes for appellant; one because the voter was not of age, and the other because the voter had been convicted of felony. He also struck off two votes from appellee; one because the voter was an infant, and the other because the voter was a non-resident of the district. This action of the court is not complained of on the appeal and this left them each receiving fifty votes. The court also struck off six votes for appellant on the ground that they were not residents of the district. Appellant complains that none of these votes should have been stricken off. The court refused to strike off the vote of Rudolph Kendrick, who had voted for appellee, and appellant complains that this vote was not stricken off and that appellee was not adjudged disqualified to take the office under the Corrupt Practice Act (Ky. Stats., sec. 1565b-1 et seq.).

As to Rudolph Kendrick, appellant proved by eight or nine witnesses that they were standing at one end of the coalhouse, which was a few feet from the schoolhouse, where the election was held, and saw appellee and Kendrick at the other end of the coalhouse, which

was about ten feet long, and these witnesses all say this or substantially this:

"I heard Bud Coleman tell Kendrick that he would give him $15.00 if he would go in and vote for him, and Rudolph Kendrick says 'No, you will have to pay me first as I have been beat out several times', and then Bud or J. R. Coleman run his hand in his pocket and pulled out two or three bills and gave them to him. Kendrick went on in to vote and Bud Coleman stopped at the first window of the school house and when Kendrick went in to vote the election officers asked him who he wanted to vote for and he said Bud Coleman."

On the other hand, the defendant introduced proof impeaching the veracity of all these witnesses but two. Coleman and Kendrick both deny that anything of this sort occurred, and they proved by two witnesses, one the father-in-law of Kendrick, that Kendrick came to the polls with his father-in-law early in the morning, went in with him, and voted and left the polls at once and did not see Coleman at all.

The question turned on the credibility of the witnesses. In cases of this sort the court gives some weight to the finding of fact by the circuit court, because he is on the ground and more or less knows local conditions and the weight to be given the conflicting testimony of the witnesses. Under this rule the judgment here cannot be disturbed.

The other ground of reversal, urged in the brief, is that the court erred in striking off six votes for appellee as nonresidents. We deem it unnecessary to pass on more than two of these votes. Virgil Morris was a young unmarried man living in an adjoining district with his father. In February before the election his brother-in-law John Sloan, who lived in district No. 152, had some business on hand that required him to be away from home much of the time, and Mrs. Sloan asked her brother Virgil Morris to come over and stay there so she would not be alone at night. He was staying there under these conditions when the election was held. While there is some evidence that he had his washing done there, it is clear from all the facts that he was only staying there temporarily with his sister and that he had not established a permanent home in that district.

The facts as to Lum Penyon are these: Lum was a young unmarried man living with his father in an adjoining district. He was deaf and rather peculiar. His brothers, John and Henry, were also living there with the father. John was married and his wife did not want to stay there any longer, so in March John and his wife and Henry and Lum packed up and moved over to a place in district No. 152. The mother of these Penyons died on March 26. John's wife became dissatisfied and went to her father's. John then left the place and joined his wife at her father's. Henry and Lum returned to their father's; Lum did not return until the day after the election. The proof fails to show that Lum abandoned his home at his father's or that the move was anything more than temporary to help his brother to get things straight over there, and the conduct of the parties strongly indicates that there was no intention to remain over there on the part of Lum, after his mother died.

It is unnecessary to consider the other four votes struck off by the court, for if the above two were properly struck off appellee was elected, and the proof at least is not such as to warrant this court in disturbing the finding of the chancellor as to Virgil Morris and Lum Penyon.

Judgment affirmed.