Stephen Brooks BRIGHT et al., Plaintiffs,

v.

Charles E. BAESLER, Jr., et al., Defendants.

No. 2249.

United States District Court, E. D. Kentucky, Lexington Division.

Dec. 30, 1971.

Kenneth J. Guido, Lexington, Ky., William A. Dobrovir, Washington, D. C., Richard G. Singer, Cincinnati, Ohio, James Blumstein, Nashville, Tenn., for plaintiffs.

E. Lawson King, Fayette County Atty., Lexington, Ky., for Baesler.

Michael R. Moloney, Asst. County Atty., Lexington, Ky., for Registration & Purgation Bd.

Walter Herdman, Asst. Atty. Gen., Frankfort, Ky., for Bd. of Elections.

## MEMORANDUM

SWINFORD, District Judge.

The court has been asked to determine whether the defendants have denied students at the University of Kentucky, in Lexington, Kentucky, equal protection of the law by conditioning their right to register to vote upon overcoming a presumption that they are domiciliaries of their parents' home. It appears from the evidence presented that each of the five named student plaintiffs have met the State registration durational requirements, but that the defendants have presumed, in accordance with an opinion by the Attorney General, that the plaintiffs do not possess or have not established legal residence in the community of the University which they are attending. Section 145 of the Kentucky Constitution requires that:

"Every citizen of the United States of the age of eighteen years who has resided in the state one year, and in the county six months, and the precinct in which he offers to vote sixty days next preceeding the election, shall be a voter in said precinct and not elsewhere . . ."

Kentucky Revised Statute 117.615 states that:

"Any person, male or female, may register as a voter during the period the registration books are open if he possesses or will possess on the day of the next regular election, the qualifications set forth in Constitution 145."

In addition to the durational requirements as set forth above, Kentucky Revised Statute 117.610 defines residency for voting purposes to be the equivalent of the legal term domicil: [1]

"The following rules, so far as applicable, shall be observed in determining

1. The term residence usually implies a mere physical presence; it may or may not be transient in character. Domicil, however, is that place where a person intends to reside permanently. A person may have several residences, but he may have only one domicil. "The intention necessary for acquisition of a domicil may not be an intention of living in the locality as a matter of temporary expediency. It must be an intention to live permanently or indefinitely in that place." 25 Am.Jur.2d Domicil section 25. In Kentucky residency, for the purpose of voter registration, is synonymous with the legal concept of domicil. Coleman v. Coleman, 243 Ky. 279, 47 S.W.2d 1034 (1932).

The Third Edition of the Ballentine's Law Dictionary defines domicil, at page 369, in the same way that KRS 117.610 (1) defines a voter's residence, i. e. that place to which a person when absent, intends to return.

the residence of a person offering to vote:

> (1) A voter's residence shall be deemed to be at the place where his habitation is, and to which, when absent he has the intention or returning."

The ability to register to vote in Kentucky is dependent upon the applicant satisfying the durational requirements of Section 145 of the State Constitution, as well as being able to manifest an intention of making his present habitation his permanent domicil. The plaintiffs do not contend that the statutory requirements for voter registration are unconstitutional. Moreover, it is admitted, tacitly if not expressly, that the State may require its voters to be domiciliaries of their voting precincts. It is the plaintiffs' contention that the defendants have, for impermissible reasons amounting to invidious discrimination, placed a greater burden of proof of domicil upon students than it has on other citizens.

The plaintiffs contend that the presumption against domicil at the university community which attaches to students is violative of the equal protection clause of the Fourteenth Amendment to the Constitution; is violative of the Twenty-sixth Amendment to the Constitution; and is violative of the spirit and letter of 42 United States Code § 1971 et seq. (Voting Rights Act).

The defendants contend that this court should abstain from accepting jurisdiction in this case as it involves a constitutional question relating to state statutory provisions which the State courts should be allowed to first determine, or, it is asserted, that this court should refuse to rule upon the merits because the plaintiffs have failed to exhaust administrative remedies. The defendants contend in the alternative that none of the plaintiffs' constitutional rights have been deprived as there is ample reason to believe that students are not domiciliaries of the university community thereby justifying the rebuttable presumption to that effect recommended by the Attorney General.

## JURISDICTION

It is the opinion of the court that it must accept jurisdiction over the subject matter of this suit and decide the case upon the merits. The defendants, in buttressing their argument for abstention, rely primarily on the decision of the United States Court of Appeals for the Fifth Circuit in Harris v. Samuels, 440 F.2d 748 (1970), a student voting rights case of similar factual circumstance. Although the Harris case is seemingly authority for the defendants' argument, this court believes that the posture of the plaintiffs' complaint and the recent and widespread interest in the voting rights of students and the young militate against the cogency of the abstention argument.

The Supreme Court has always sought to guard against the denial or dilution of the people's right to vote. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1965); Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); and Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970). Inasmuch as the right to vote is fundamental to the philosophy and fabric of this country's system of government, any State supported encroachment or infringement upon it must pass constitutional scrutiny. Because this case involves a federal question of substantial significance which could not be avoided by any adjudication in the State courts—whether students have been denied their Fourteenth Amendment right to equal protection of the law by the imposition of more rigorous domiciliary requirements upon them than on other qualified voters—it is this court's considered opinion that it must not abstain from rendering judgment. Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). Furthermore the court is satisfied that the doctrine of exhaustion of administrative remedies is not applicable. The defendants assert that chapter 117 of the Kentucky Revised Statutes provides for the formation of a Purgation Board to which the plaintiffs must first submit their grievances. Notwithstanding the normal

requirement of exhaustion of administrative remedies in voter registration disputes, where there is a constitutional challenge which is substantial and where there is a need to resolve the controversy quickly so as to prevent continued abridgment of constitutional rights exhaustion of administrative remedies is not a condition precedent to a court action.

In supplementing this court's probable jurisdiction under 28 United States Code §§ 1331, 1343(3), (4) the plaintiffs have attempted to invoke jurisdiction under sections 1971 and 1973 of Title 42, United States Code, and the Twenty-sixth Amendment to the Constitution. There is some doubt whether the plaintiffs have stated a claim upon which relief could be granted within the purview of either of these sections of the statute or the Twenty-sixth Amendment.

Sections 1971 et seq. seem to be directed toward the elimination of discriminatory voting practices imposed upon racial groups. The plaintiffs persuasively urge that the language of these sections could be construed to apply to any person or group whose voting rights have been abridged, however, the court believes that it is not necessary to decide that question at this time as the Fourteenth Amendment prohibition against unequal protection of the law provides an adequate remedy.

 The Twenty-sixth Amendment requires that no State shall abridge the right of citizens of the United States who are eighteen years of age or older, to vote on account of age. Whether the plaintiffs have stated a claim under the Twenty-sixth Amendment is in doubt. The fact that students may be minors is incidental to the major thrust of this suit. This is a student voting rights case, rather than a minor voting rights case. If the students have been denied the right to exercise their franchise, it is not, in a technical or legal sense, because of age, but because allegedly discriminatory requirements of proof of domicil have been imposed upon them. There are students attending the University of all ages, and presumably the domiciliary requirement is applied equally to each of them. There is no law or statute in Kentucky, as far as this court has been able to ascertain, which states that a minor cannot, for voting purposes, establish a domicil other than that of his parents. It may be argued, as the plaintiffs vigorously assert, that the rebuttable presumption against student domicil is simply a sophisticated mechanism for abridging the voting rights of the young, but the court feels that from the claims stated in the complaint, and the evidence adduced at the hearing and submitted in the record, an inference of State discrimination against minors in their capacity as qualified voters is wholly improper.[2] There is little or no persuasive evidence that the presumption against student domicil at the university community was contrived

2. At this time the only case granting relief under the Twenty-sixth Amendment, with which this court is familiar, is Jolicoeur, et al. v. Mihaly, et al., 5 Cal. 3d 565, 96 Cal.Rptr. 697, 488 P.2d 1 (1971). That case, although seemingly analogous to this case, is, in fact, fundamentally different. In California the Attorney General had recommended and the State had adopted a conclusive presumption that for voting purposes the residence of an unmarried minor (whether student or not) would normally be his parents' home regardless of where the minor's present or intended future habitation might be. In Kentucky the Attorney General has recommended that the State presume that students (without reference to their age) are not domiciliaries of the university in which they have matriculated. There is no conclusive presumption in Kentucky that a minor may not establish a domicil for voting purposes, other than that of his parents. The Court, in Jolicoeur, held that although the State had a right to require each of its voting citizens to be domiciliaries of their voting precincts, it could not single *minors* out for special treatment. The facts of this case do not indicate that the State has singled minors out for special treatment. Conceding the fact that the majority of undergraduate students may be minors, there is no indication in the Attorney General's opinion that the domiciliary requirement would not apply to older students as well as those under the age of majority.

to disenfranchise the young; on the contrary, it seems to have been adopted on the belief that most, if not all, students would retain a desire to return to their former homes upon graduation or the termination of their college careers. For these reasons the court, as stated above, feels that the Fourteenth Amendment protection against discriminatory enforcement of the law must be the basis upon which this case is decided.

## MERITS

The defendants in this case have refused to register the plaintiffs, despite the fact that the plaintiffs have satisfied the durational residency requirements set out in section 145 of the Kentucky Constitution. The plaintiffs are only able to register if they successfully complete a series of questions ostensively designed to overcome the presumption that they are domiciliaries of their parents' or their own previous homes.[3] The evidence shows that no other group of individuals, upon verification that they have met the durational requirements of section 145 of the Constitution, is required to undergo extensive examination as to proof of domicil.[4] Included in those persons not examined as to proof of domicil would be a substantial number of people below the age of legal majority who are not students. It appears from the deposition of Charles E. Baesler, Jr., Clerk of Fayette County, that only when

---

3. The plaintiffs argue, and the court is inclined to agree, that many of the questions asked by the defendants are not apposite to proof of domicil. For example the plaintiffs were asked whether they are married, whether they are in graduate school, and whether they are employed. These inquiries have limited use in proving or establishing domicil.

4. The deposition of Charles Baesler, Fayette County Clerk includes the following colloquy:
 "Q. 59 Do you when you discover that someone is a laborer request that person to state that he is going to remain in Fayette County permanently?
 A. Yes, sir.
 Q. 60 Do you then accept that person's statement of that fact?
 A. Sure. If a local worker (or presumably any other non-student) would come in and tell us he was working here and that he had been here the required time to qualify I don't think we would go into it.
 Q. 61 You wouldn't ask him any further questions?
 A. I don't think so."
 Stephen Driesler, who served in 1969 as Deputy County Clerk in the County Clerk Registration Office testified at the hearing as to the criteria applied to other residents, as follows:
 "A. Well, we were pretty much under operating policy that anyone who came in and gave us the information that we were required to take on the voter registration form and who would swear that this was true, that even if we had some doubts about this, that we were to go ahead and allow these persons to register because there were other procedures for purging these people. They would be challenged at the polls by the parties and reviewed by the Purgation Board.
 Under no circumstances can I recall during the time I worked in the clerk's office, either myself or either one of the other two ladies who worked there with me, did we refuse an older person registration on any grounds other than the fact that they had not met— that they had not lived in Fayette County or Kentucky the prescribed length of time. However, we did make it a policy when anyone appeared to be a student, and of course that was pretty obvious to ascertain, if you notice on the voter registration form, which I think has already been introduced in evidence, the blank for occupation is sort of in the middle left-hand side and it was not a question that we usually asked first. It was a question that was after we obtained their name, their party registration, their address, then we obtained their occupation. It was a policy if a person appeared to be a student they were asked, 'What is your occupation?' If they said that they were a student, then they were not allowed to register, or if their address indicated that they were a student, like living in a resident hall, domitory, then they were not allowed to register. But all other times no other questions or anything were applied to other people. I think it was strictly a policy toward people who were suspected of being students, this further inquiry."

a person lists his occupation as "student" is he presumed not to have met the domiciliary requirement implicit in the statutory regulations governing registration. It is contended that while the State may require its voters to prove domicil, it has denied the students of Kentucky equal protection of the law by placing an additional burden of proof upon them.

■■ Where it is argued that a state has violated the equal protection clause of the Fourteenth Amendment to the Constitution the state must, under the traditional test expounded in McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), show that the challenged classification does not rest on grounds wholly irrelevant to the advancement of a valid objective. If there is a reasonable basis for the classification then it cannot be said that the State has denied equal protection of the law. Where, however, the classification is suspect; where it violates some enumerated constitutional right, such as freedom of speech, religion or association, then the State must show that there is a "compelling" reason for the classification. Because voting rights involve the First Amendment freedom of association, the State may not impose restrictions upon that right unless there is a compelling state interest in the imposed restriction or classification. Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). It would seem, therefore, that the extra burden of proof imposed upon students in regard to proof of their domicil may only be held constitutional if a compelling state interest is thereby served.

■ There is no dispute in this case that Kentucky has the right to require every applicant for voter registration to be a domiciliary of the precinct in which he offers to vote. But may the State require, and is there any compelling reason why it should require, students to go to greater lengths to prove domicil than other citizens. This court thinks not.

The State concedes that it is possible for a student to establish domicil at the university community. There is then, no reason why the State should, as a policy, doubt the verity of every student who claims to have satisfied the registration requirements. There is no reason to assume, and the defendants have offered none that would satisfy the compelling interest test, that a person claiming to have fulfilled the domiciliary requirement is not to be believed if he is a student. Moreover, there is no reason to believe that students who have established domiciliary status within the university community will not take a keen and serious interest in the political issues of that area nor is there any reason to believe that they will not exercise their franchise in a responsible manner. Simply put there are no salient reasons to treat registering students differently from other people merely because they are students.

The State should not assume that those students who do not intend to make the university community their domicil—who intend to return to their former homes—will want to or attempt to register to vote in the university community. The students who wish to return to their former homes, will, it is fair to assume, maintain an interest in the political developments of that community and want to preserve their right to vote at that location. Notwithstanding the fact that there may be a significant number of students who do intend to return to their former homes, there is an equally significant number of students who do not intend to return to their former homes, and the presumption against university domicil unfairly discriminates against them.

The court believes that the presumption that all students retain a desire to return to their previous homes following the termination or completion of their college careers is not valid. The court cannot conceive of any reason why it should not be presumed that student applicants for voter registration, like any other applicant, have made their application to register in good faith. Admittedly a student may not be able to state with certitude that he intends to permanently live in the university commu-

nity, but such a declaration is not necessary to establish domicil. To establish domicil it is only necessary to show that one's former domicil has been abandoned and that there exists no intention of returning to it. The requisite intention must be an intention to live indefinitely at the claimed domicil: "but it need not be an intention to remain for all time; it is sufficient if the intention is to remain for an indefinite period." 25 Am.Jur.2d Domicil section 25.

 It is the court's concluding opinion that the defendants may not require students to meet more stringent criteria of domicil than other voter registration applicants. This is not to say that the defendants may not require each applicant to prove domicil. The defendants may ask each applicant a series of questions directed at proving domicil, but each applicant should be asked the same questions, and the questions should reasonably relate to proof of domicil. Nothing herein should be construed to limit the registration Board's powers of purgation as set out in Kentucky Revised Statute 117.-810 et seq., but the simple fact that a person is a student must be of neutral connotation. Although it is not within the province of the court to determine what questions should be asked of each registration applicant, the following questions might be appropriate for purposes of establishing domicil: [5]

1) What is your present address?

2) Do you regard any other place as your home?

3) Do you intend to make Fayette County your place of residence for an indefinite or permanent period of time?

4) Do you consider yourself to have permanently abandoned your former home or residence?

5) Do you have no present intention to reside elsewhere or return to your former home or place of residence?

An order will this day be entered enjoining the defendants from imposing additional or special criteria for proof of domicil upon university students. The defendants may require proof of domicil, but each registration applicant should be asked the same questions, regardless of occupation, and the questions should reasonably relate to proof of domicil. Nothing may be presumed or implied from the fact that a registration applicant is a student.

---

5. The Kentucky Court of Appeals stated in Everman v. Thomas, 303 Ky. 156, 197 S.W.2d 58 (1946), that mere declarations of intent to remain permanently at one's present address are not sufficient to prove domicil. However, the Fayette County Registration Board seems to accept, as to all persons except students, sworn statements of intent for pur-

poses of registration. It would seem, therefore, that the law of Everman would only be applicable when a voter is being formally challenged pursuant to Kentucky's statutory purgation procedures. At such a time a voter could be required to submit circumstantial evidence to show domicil.