Amy **AUERBACH**, Barbara Shapiro, Andrea Digregorio, Monica Rossi, Mary Ellen Scarpone, Stephen Schreiber, Sharon Sonner, Carrie Newman, Robert Weber, Louis Esbin, Alan Frutkin, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

Raymond J. **KINLEY** and George Scaringe, Commissioners of the Albany County Board of Elections; Donald Rettaliata and William McKeon, Commissioners of the New York State Board of Elections, individually and in their official capacities, Defendants.

No. 80–CV–374.

United States District Court, N. D. of New York.

Oct. 9, 1980.

Jack Lester, Lewis B. Oliver, Jr., Albany, N. Y., for plaintiffs.

Robert G. Lyman, Albany County Atty., Albany, N. Y., for defendants Kinley and Scaringe; William J. Conboy, II, Deputy County Atty., Albany, N. Y., of counsel.

Robert Abrams, Atty. Gen., State of N. Y., Albany, N. Y., for defendants Rettaliata and McKeon; James G. McSparron, Asst. Atty. Gen., Lance A. Russell, Asst. Atty. Gen., Albany, N. Y., of counsel.

McCURN, District Judge.

## MEMORANDUM–DECISION AND ORDER

Plaintiffs in this voting rights case are eleven students attending the State University of New York at Albany who seek to register to vote in their college community but who were denied registration by the Albany County Board of Elections. Plaintiffs bring this class action for declaratory and injunctive relief contending that Section 5–104 of the New York Election Law, Article II, § 4 of the New York State Constitution and the questionnaire used by the Albany County Election Commissioners in connection with student registration are unconstitutional on their face and as applied in that they impermissibly discriminate against and unduly burden students' exercise of the franchise in violation of the Fourteenth, Fifteenth and Twenty–Sixth Amendments of the United States Constitution and Sections 1971, 1973 and 1983 of Title 42, United States Code.

Defendants Kinley and Scaringe are Commissioners of the Albany County Board of Elections (hereinafter "County Commissioners"). Defendants Rettaliata and McKeon are Commissioners of the New York State Board of Elections. The State and County Defendants are sued both individually and in their official capacities.

Jurisdiction is asserted under 28 U.S.C. §§ 1331 and 1343(3), (4).

The matter is now before the Court on plaintiffs' motion for a preliminary injunction and defendants' motion to dismiss. Defendants' motion is made pursuant to Rule 12(b) of the Federal Rules of Civil Procedure for failure to raise a substantial federal question and failure to state a claim against either the State or County defendants. In treating the motion to dismiss, the allegations in the complaint must be deemed true.

## I. FACTUAL AND STATUTORY BACKGROUND

The named plaintiffs are students at the State University of New York at Albany (hereinafter "SUNY at Albany") and citizens of the United States. At the time the complaint was filed, each had lived in Albany County for at least thirty (30) days and was at least eighteen (18) years of age. Earlier this year, plaintiffs applied to register to vote in Albany County by submitting a mail registration form containing the personal information required under § 5–210 of the Election Law. However, plaintiffs' names were not entered immediately on the registration list because registration forms submitted by students are subject to further scrutiny under the provisions of the New York Election Law challenged in this case.

Section 5–104(1) of the New York Election Law (formerly § 151(a)), which tracks Art. II, § 4 of the New York Constitution, provides as follows:

1. For the purpose of registering and voting no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States, nor while engaged in the navigation of the waters of this state, or of the United States, or of the high seas; nor while a student of any institution of learning; nor while kept at any welfare institution, asylum or other institution wholly or partly supported at public expense or by charity; nor while confined in any public prison.

An applicant's residence for registration and voting purposes is defined in § 1–104(22) of the Election Law (formerly § 151(b)) as " . . . that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return." Section 5–104(2) of the Election Law (formerly § 151(c)) provides:

2. In determining a voter's qualification to register and vote, the board to which such application is made shall consider, in addition to the applicant's expressed intent, his conduct and all attendant surrounding circumstances relating thereto. The board taking such registration may consider the applicant's financial independence, business pursuits, employment, income sources, residence for

income tax purposes, age, marital status, residence of parents, spouse and children, if any, leaseholds, sites of personal and real property owned by the applicant, motor vehicle and other personal property registration, and other such factors that it may reasonably deem necessary to determine the qualification of an applicant to vote in an election district within its jurisdiction. The decision of a board to which such application is made shall be presumptive evidence of a person's residence for voting purposes.

Pursuant to these statutory provisions, the defendant, County Commissioners, require students to complete and sign a questionnaire before their registration applications are considered. This questionnaire, reproduced as Appendix A below, consists of seventeen (17) questions requesting additional and more detailed information concerning the applicant's affairs than does the standard mail registration form. In this case, all plaintiffs completed and returned the questionnaires to the County Board.

The Albany County Board of Commissioners met on February 20, 1980, and denied plaintiffs' applications to register to vote in Albany County. The notice of rejection that was sent to each plaintiff gave no reasons for the Commissioners' decision apart from the statement that, based on § 5–104, " . . . the Board has determined that you do not have a valid, permanent and fixed residence in the County of Albany for voting purposes." Complaint, Exhibit Q.

Following this initial rejection, plaintiffs were granted "in person appeals" before the Albany County Election Commissioners.[1] Again, all plaintiffs were denied registration to vote in Albany County. Those plaintiffs who reside on the SUNY at Albany campus allegedly were informed by the Commissioners that registration was denied because they do not consider dormitories to be "legal residences" for voting purposes. Other plaintiffs were told that registration was denied either because they visit or receive financial assistance from their parents, or because they have access to a room in their parents' home.

Thereafter plaintiffs commenced this action under 42 U.S.C. § 1983 on behalf of themselves and "all students residing in Albany County", alleging the deprivation of federal statutory and constitutional rights under color of state law. Specifically, plaintiffs allege that students seeking to register to vote in their college community are denied their rights under the Fourteenth, Fifteenth and Twenty–Sixth Amendments by the imposition of inappropriate and unevenly applied requirements and procedures for establishing residency for voting purposes. They further allege that the disparate treatment accorded students in Albany County is violative of 42 U.S.C. §§ 1971 & 1973. Plaintiffs seek (1) a declaratory judgment that Art. II, § 4 of the New York Constitution, § 5–104 of the Election Law and the questionnaire used by the Albany County defendants are unconstitutional, and (2) to enjoin the defendants from (a) using the questionnaire, (b) treating students in Albany County differently from all other citizens when they apply to register to vote, and (c) denying students the right to register to vote in Albany County.

## II. MOTION TO DISMISS THE COMPLAINT

Both the State and County defendants move to dismiss the action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction on the ground that the complaint fails to raise a substantial federal question. In support of this motion defendants advance three arguments. First, that the Supreme Court gave at least tacit approval to similar statutory treatment of prospective student voters in *Carrington v. Rash*, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965). Second, that § 5–104 of the Election Law and the use of a questionnaire to assist County Boards in the determination of students'

---

1. The verified complaint states that at the appeal hearings each plaintiff gave sworn testimony and that records were kept of the proceedings. Those records are not now before the Court.

residency qualifications have withstood similar constitutional challenges in *Whittington v. Board of Elections of Onondaga County,* 320 F.Supp. 889 (N.D.N.Y.1970); *Palla v. Suffolk County Board of Elections,* 31 N.Y.2d 36, 334 N.Y.S.2d 860, 286 N.E.2d 247 (1972); *Ramey v. Rockefeller,* 348 F.Supp. 780 (E.D.N.Y.1972) (three–judge court); and *Cesar v. Onondaga County Board of Elections,* 54 A.D. 1108, 389 N.Y. S.2d 58 (App.Div.1976). Third, defendants urge that to the extent plaintiffs are dissatisfied with the decisions of the Albany County Commissioners, the claim advanced seeks nothing more than a review of state administrative proceedings, and the proper forum for such review is the state courts, pursuant to either § 16–108 of the Election Law or Art. 78 of the N.Y.C.P.L. and Rules.

A case otherwise within the jurisdiction of the federal courts may nevertheless be dismissed if the claim advanced "is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits." *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666–67, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974). *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 859, 35 L.Ed.2d 36 (1973), while treating of the former requirements for convening a three–judge court, remains relevant to the present inquiry:

> (C)laims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of [former] 28 U.S.C. § 2281. A claim is insubstantial only if " 'its unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' " *Ex Parte Poresky,* [290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933)], quoting from *Hannis Distilling*

*Co. v. Baltimore,* [216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 (1910)]. . . .

This Court is persuaded that neither *Carrington* nor the other cases relied upon by defendants here satisfy the test set forth in *Goosby* and that plaintiffs' challenge to the student voter registration scheme raises a substantial federal question. Moreover, a series of student voter registration cases from other jurisdictions, culminating in *United States v. State of Texas,* 445 F.Supp. 1245 (S.D.Texas 1978) (three–judge court), *aff'd mem.,* 439 U.S. 1105, 99 S.Ct. 1006, 59 L.Ed.2d 66 (1979), provide strong support for plaintiffs' claim that absent a compelling justification neither a state nor a political subdivision may, consistent with the Equal Protection Clause of the Fourteenth Amendment, require students to go to greater lengths than other citizens to establish residency. In light of the clear trend of recent case law invalidating similar restrictions on the opportunity of students to vote in their college communities, this Court concludes that plaintiffs have stated a proper claim and that the registration practices challenged in this case warrant further judicial scrutiny.

In *Carrington v. Rash, supra,* the Supreme Court held unconstitutional a provision of the Texas Constitution prohibiting members of the armed forces who had moved to Texas during their military service from ever acquiring a voting residence in the State so long as they remained in military service. Emphasizing that the right to vote lies "close to the core of our constitutional system," the Court held only that Texas' absolute denial of the vote to servicemen constituted "an invidious discrimination in violation of the Fourteenth Amendment." *Id.,* 380 U.S. at 96, 85 S.Ct. at 780. In reaching its decision the Court did observe that the conclusive presumption of nonresidency applied only to members of the military services, whereas other groups–such as students, civilian employees of the federal government and inmates of various public institutions–which presented "specialized problems in determining residency" were provided "at least an opportunity to show the election officials that they

are bona fide residents." *Id.* at 95, 85 S.Ct. at 780 (citing a provision of the Texas Code and similar statutes from other States). Having invalidated the constitutional provision at issue in that case, the Court went on to state that "Texas is free to take reasonable and adequate steps, as have other States, to see that all applicants for the vote actually fulfill the requirements of bona fide residence." *Id.* at 96, 85 S.Ct. at 780.

Since both the Twenty–Sixth Amendment and the current provisions of the New York Election Law were adopted six years after *Carrington* was decided, the Supreme Court's reference in *Carrington* to "reasonable and adequate steps" taken by "other States" cannot be taken as an express approval of New York's current treatment of prospective student voters.[2] More importantly, the *Carrington* Court's reference to other statutes prescribing separate treatment of student voters was by way of dictum. The holding in *Carrington* does not foreclose or render frivolous plaintiffs' Fourteenth Amendment claim that the New York statutory scheme, as construed by the state courts and as applied by the County Commissioners, subjects students to unduly rigorous, inappropriate and unevenly applied procedures and requirements for establishing voting residency. *Cf. Dunn v. Blumstein,* 405 U.S. 330, 343–44, 92 S.Ct. 995, 1004, 31 L.Ed.2d 274 (1972) ("An appropriately defined and uniformly applied requirement of bona fide residence may be necessary to preserve the basic conception of a political community, and therefore could withstand close constitutional scrutiny"). *See also, Whatley v. Clark,* 482 F.2d 1230, 1234 (5th Cir. 1973), *cert. denied sub nom., White v. Whatley,* 415 U.S. 934, 94 S.Ct. 1449, 39 L.Ed.2d 492 (1974) (*Carrington's* reference to the opportunity given to students and other groups to prove their claims of residency "should be seen only in

contrast to the total disenfranchisement of servicemen, not as tacit approval of a rebuttable presumption of nonresidency as applied to students").

The Twenty–Sixth Amendment was adopted in 1971. The difficulties encountered by recently enfranchised students seeking to register to vote in their college communities have prompted extensive litigation in state and federal courts across the country. *Palla v. Suffolk County Board of Elections, supra,* involved three companion cases challenging the constitutionality of former § 151 as amended by the New York State Legislature in response to the Twenty–Sixth Amendment. Laws of New York 1971, c. 1096.[3] The petitioners in each case were summarily denied the right to register to vote in the general election because they lived in college dormitories; or, where they had been registered prior to the passage of the 1971 amendments to § 151 of the Election Law, they were notified that their right to vote would be voided or challenged on Election Day. *Id.* 334 N.Y.S.2d at 863–64, 286 N.E.2d at 249–50. The New York Court of Appeals ruled broadly that § 151 is not violative of the Fourteenth or Twenty–Sixth Amendments or 42 U.S.C. § 1971, and concluded that the statutory scheme "represents, at most, merely a permissible effort to insure that all applicants for the vote actually fulfill the traditional requirements of bona fide residence." *Id.* at 866, 286 N.E.2d at 251. The Court acknowledged that "[u]nder ordinary circumstances, and at common law, the fact of physical presence within a particular election district may be deemed consistent with the claimed change in permanent residence;" but characterized as "entirely neutral" its construction of § 151(a) that a student's physical presence "is deemed evidence merely of an intention to reside temporarily in a particular district for purposes consistent with

---

2. Defendants' reliance on *Whittington, supra,* is similarly misplaced since *Whittington* was decided prior to the adoption of both the Twenty–Sixth Amendment and the 1971 Amendment of § 151 of the Election Law.

3. As noted above, the provisions of § 151 as amended in 1971 have been recodified by sub-

sequent legislation in 1976 and 1978. The 1971 version of § 151(a) is now § 5–104(1), the 1971 version of § 151(b) is now § 1–104(22) and the criteria deemed relevant to bona fide residency that were added in the 1971 version of § 151(c) are now listed in § 5–104(2).

preparation for a particular calling." *Id.* at 867, 286 N.E.2d at 252. Drawing on prior case law, the Court also construed § 151 to require that when a student seeks to change residency for voting purposes, the requisite intention to change must be demonstrated by facts and conduct "wholly independent" of the student's presence at the college for educational purposes. *Id.* at 868, 286 N.E.2d at 252.

With respect to the claim that § 151(c) denies students equal protection of the laws by authorizing a unique and more extensive line of inquiry than that put to nonstudent applicants, the *Palla* Court reasoned that § 151 imposes no voter qualifications but deals instead "with the indicia of residence, and this State's incidental efforts at ferreting out those whose claimed residence is not bona fide." *Id.* at 869, 286 N.E.2d at 253. These criteria, the Court stated, are applicable to all prospective registrants, and "classifications incidental to [the determination of bona fide residency] need only be reasonable in light of the scheme's purposes in order to be sustained." *Id.,* citing inter alia, *Carrington* and *Dunn.* The statutory requirement that students, along with other transients, support their declarations of changed domicile with facts wholly independent of their residence at an institution was found to satisfy the rational basis standard because the classification "is consonant with the natural inference that their stay is for limited purposes only." The Court concluded that where students are in fact residents and intend New York "for a permanent home", they have a right to equal political representation whatever their views. *Id.* at 869–70, 286 N.E.2d at 253–54.

In *Ramey v. Rockefeller, supra,* a three–judge district court reviewed the decision in *Palla* for the purpose of resolving a contemporaneous challenge to § 151 brought by students living in dormitories at the State University of New York at Stony Brook. The Court began its analysis by rejecting the contention that singling out students and certain other groups in § 151(a) is an unconstitutional discrimination. In reaching this result the Court stated that in its view the "gained or lost" language means only that the presence of a former non–

domiciliary as a student within the State is not *alone* sufficient to supply the required mental element for establishing a domicile of choice. *Id.* 348 F.Supp. at 786. While it is true that this view is plausible and fits comfortably within the construction of § 151 adopted in *Palla*, the two readings are not coextensive; in *Palla* the New York Court of Appeals went further and read § 151 as requiring that students demonstrate the required mental element based on facts and conduct that are "wholly independent" of presence as a student. Thus, an initial question that remains unanswered after *Palla* and *Ramey* is whether a residency statute which deems irrelevant any facts or conduct which are not wholly independent of a prospective voter's presence as a student is "necessary to preserve the basic conception of a political community." *Dunn, supra,* 405 U.S. at 344, 92 S.Ct. at 1004.

The second difficulty with defendants' reliance on *Ramey* lies in that Court's conclusion that statutes which subject students to what amounts to a rebuttable presumption of nonresidency are constitutional. Addressing the plaintiffs' equal protection claim in that case, the *Ramey* Court reasoned that § 151 is functionally equivalent to the Texas statute dealing with student registration that was implicitly approved in *Carrington* and expressly found constitutional in *Wilson v. Symm*, 341 F.Supp. 8 (S.D.Tex.1972). Since students are given the opportunity to demonstrate bona fide residency under both schemes, the Court found it immaterial that other groups of citizens possessing similar elements of transiency are not subject to a similar burden. *Id.* at 786.

Subsequent to the decision in *Ramey,* however, the Texas statute upheld in *Wilson* was struck down on equal protection grounds in *Whatley v. Clark,* 482 F.2d 1230 (5th Cir. 1973), *cert. denied sub nom., White v. Whatley,* 415 U.S. 934, 94 S.Ct. 1449, 39 L.Ed.2d 492 (1974). In *Whatley,* the Fifth Circuit rejected the argument that disparate treatment of students is constitutionally permissible so long as the same substantive standard of bona fide residency is applied to all prospective voters:

By its terms [the statute] creates a presumption that students are not domiciliaries of the places they live while attending school. Of course, the presumption is rebuttable; but unless a student carries the burden of persuading the voting registrar that he is in fact a domiciliary of the place where he resides for the better part of each year, he is not permitted to vote there and is consequently denied an opportunity to participate in elections which may have considerably more impact on his life than do those in the area where he resided before becoming a student. Other prospective voters, on the other hand, are not subject to this presumption of nonresidency or to the attendant burden of overcoming it.

*Id.* at 1233 (footnote describing a questionnaire similar to that used in Albany County, omitted). The Court concluded that because the disparate treatment of prospective student voters was not necessary to promote the state's interest in preserving the purity of the ballot, the statute was violative of the Fourteenth Amendment. *Id.* at 1234. Since the equal protection analysis in *Ramey* was premised at least in part on the authority of *Wilson*, which subsequently was overruled by *Whatley*, *Ramey's* precedential weight is now limited.

While the equal protection analysis in *Ramey* is subject to further review, that Court's treatment of the sustantive definition of voting residence lends support to the claim advanced by the plaintiffs here. With respect to the substantive standard for determining voting residence set forth in former § 151(b) and now codified as § 1–104(22), the *Ramey* Court reasoned that because "(t)he objective is to determine the place which is the center of the individual's life now, the locus of his primary concern," "we think that the only constitutionally permissible test is one which focuses on the individual's present intention and does not require him to pledge allegiance for an indefinite future." 348 F.Supp. at 788. The Court recognized the tension which exists between this standard and the construction of § 151 adopted by the Court of Appeals in *Palla*, but concluded that "it is too early to determine whether ... New York will or will not apply a notion of a student's intention to make a dormitory or other room a home that is too rigorous to meet constitutional standards." *Id.* at 790 (footnote omitted).

Accepting the conclusion in *Ramey* that a state may not deny the right to vote of a citizen who intends to make that place his home for the time at least, plaintiffs in this case present the question whether a statutory scheme which singles students out for special inquiry is necessary to promote a compelling state interest.

Courts in other jurisdictions have consistently struck down state statutes or practices that require students to shoulder a special burden in order to register to vote. In *Bright v. Baesler*, 336 F.Supp. 527 (E.D. Ky.1971) the Court held that a state practice of singling out students by requiring them to complete a questionnaire designed ostensibly to overcome a presumption of nonresidency denied students equal protection of the laws:

The State concedes that it is possible for a student to establish domicil at the university community. There is then, no reason why the State should, as a policy, doubt the verity of every student who claims to have satisfied the registration requirements. There is no reason to assume, and the defendants have offered none that would satisfy the compelling interest test, that a person claiming to have fulfilled the domiciliary requirement is not to be believed if he is a student.

．　　．　　．　　．　　．

The court believes that the presumption that all students retain a desire to return to their previous homes following the termination or completion of their college careers is not valid. The court cannot conceive of any reason why it should not be presumed that student applicants for voter registration, like any other applicant, have made their application to register in good faith.

*Id.* at 533. The Court also expressed its agreement with the students' claim that questions concerning an applicant's marital status, employment or enrollment in gradu-

ate school were basically irrelevant to a determination of bona fide residency. *Id.* at 532 n. 3. Having invalidated the challenged practice, the Court held that state and county officials may ask each applicant a series of questions directed at proving domicile, "but each applicant should be asked the same questions, and the questions should reasonably relate to proof of domicile." *Id.* at 534.

In *Shivelhood v. Davis*, 336 F.Supp. 1111 (D.Vt.1971), the Court held that in determining whether students had the requisite intent to remain in the election district indefinitely, local election officials could not constitutionally require students "to fill out a supplemental questionnaire involving questions concerning their domicile unless all applicants are required to complete the same questionnaire." *Id.* at 1115. Stating that any questionnaire must be equally relevant to all prospective registrants and not designed only to apply to students, the Court went on to observe:

> The fact that a student lives in a dormitory, is unmarried, is supported financially by his parents who live elsewhere, would be considered a minor in the state in which his parents live and occasionally visits his parents, even if all these factors occur together, is not alone sufficient to preclude domicile in the town in which the student attends school, although these factors may be considered together with other relevant evidence.

*Id.* Substantially similar state and local practices which subject student voter applications to special scrutiny were invalidated in *Sloane v. Smith*, 351 F.Supp. 1299 (M.D. Pa.1972); *Frazier v. Callicutt*, 383 F.Supp. 15 (N.D.Miss.1974); *Worden v. Mercer County Board of Elections*, 61 N.J. 325, 294 A.2d 233 (1972), and most recently in *United States v. State of Texas, supra*, 445 F.Supp. 1245 (1978) aff'd mem., 439 U.S. 1105, 99 S.Ct. 1006, 59 L.Ed.2d 66 (1979).

*United States v. State of Texas* involved a complaint brought by the federal government alleging that the Waller County Registrar's use of a special questionnaire had the effect and intent of abridging the right of students at Prairie View A & M University to vote in violation of the Fourteenth, Fifteenth and Twenty–Sixth Amendments. Based on evidence that only students were required to complete the questionnaire and that the local official continued to apply the presumption of student nonresidency struck down in *Whatley, supra*, the Court found that the local official's registration practices violated the Fourteenth and Twenty–Sixth Amendments and permanently enjoined him from, among other things, using the questionnaire.

Since the Supreme Court itself has proclaimed that summary affirmances have precedential value, *Edelman v. Jordan*, 415 U.S. 651, 671, 94 S.Ct. 1347, 1359, 39 L.Ed.2d 662 (1974), and the Second Circuit has concluded that they are binding on the lower courts of this Circuit, *Mercado v. Rockefeller*, 502 F.2d 666, 673 (2d Cir. 1974) *cert. denied*, 420 U.S. 925, 95 S.Ct. 1120, 43 L.Ed.2d 394, the Court's affirmance of *U. S. v. Texas*,[4] together with the reasoning in the *Baesler–Whatley* line of cases provides ample support for this Court's conclusion that plaintiffs in this case have raised a substantial Fourteenth Amendment challenge to New York's student registration scheme as construed by the *Palla* Court and as applied by the defendants.

Having determined that plaintiffs' Fourteenth Amendment claims raise a substantial federal question, the other claims ad-

4. This Court is cognizant of Chief Justice Burger's recent warning that when the Supreme Court summarily affirms the judgment of a three–judge district court, it does not necessarily affirm the reasoning by which it was reached. *Fusari v. Steinberg*, 419 U.S. 379, 391, 95 S.Ct. 533, 540, 42 L.Ed.2d 521 (1975) (Burger, C. J., concurring). Thus, the Court may have reasoned that requiring students to submit to an extensive inquiry not demanded of other prospective voters failed to satisfy even the rational basis standard of equal protection. Alternatively, the Court may have reasoned that the use of the questionnaire constituted an inappropriate and unevenly applied procedure for insuring bona fide residence. *Cf. Dunn v. Blumstein, supra*. Or the Court may have based its affirmance on entirely different grounds. In any event, it cannot seriously be contended that the Court's summary affirmance in *U. S. v. Texas* sustains the position advanced by the defendants in this case.

vanced against New York's statutory scheme and the use of registration questionnaires require only brief discussion at this point since defendants have not cited any Supreme Court decision squarely on point and since certain of the claims appear to be designed as a framework for proofs concerning the nature and effects of the allegedly discriminatory practices. *Cf. Baker v. Carr*, 369 U.S. 186, 194–95 n. 15, 82 S.Ct. 691, 697–98 n. 15, 7 L.Ed.2d 663 (1961).

### Claims Under the Twenty–Sixth Amendment and the Voting Rights Act.

Section 1 of the Twenty–Sixth Amendment provides that, "(t)he right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." While it is clear that the 18 to 21 year old age group is a protected class under the Twenty–Sixth Amendment,[5] the statutory scheme at issue here appears to be directed at and is alleged to discriminate against students rather than minors. In short, this case may be characterized as, "a student voting rights case rather than a minor voting rights case." *Beasler, supra*, 336 F.Supp. at 531. In *Ramey, supra*, 348 F.Supp. at 790–91 n.7, Judge Friendly rejected a similar Twenty–Sixth Amendment claim stating, ". . . these students were denied registration because their residency was in doubt and not because of their age." *Cf. Jolicoeur v. Mihaly*, 5 Cal.3d 565, 96 Cal.Rptr. 697, 488 P.2d 1 (1971), where the California Supreme Court held that although the state may require each of its voting citizens to be domiciliaries of their voting precincts, the state's adoption of a presumption that for voting purposes the residence of all unmarried minors (regardless of student status) would normally be their parents' home violated the letter and spirit of the Twenty–Sixth Amendment.

Notwithstanding the lack of perfect congruence between the class of student voters and the class of 18 to 21 year old voters, plaintiffs maintain that the 1971 amendments to former § 151 of the Election Law (now codified as §§ 1–104(22) and 5–104(2)) were designed to protect college communities from concentrated student balloting by requiring recently enfranchised members of the student class to go to greater lengths to establish residency in their college community. Asserting that the majority of college students are minors, plaintiffs contend that the practical effect of the statutory scheme and the use of the questionnaire is to discourage a significant segment of the constitutionally *protected* class from exercising their franchise in the community with which they are most closely tied and to disenfranchise those students who are unable to register elsewhere. *See U. S. v. Texas, supra*. While plaintiffs may be able to marshall sufficient evidence to establish that New York's statutory scheme was contrived to disenfranchise the young, this Court is persuaded that any preliminary relief must be justified on the basis of the Fourteenth Amendment.[6]

There is also some doubt whether the disparate treatment allegedly accorded students under § 5–104 comes within the purview of 42 U.S.C. § 1971(a)(2)(A), which provides:

(2) No person acting under color of law shall—

---

**5.** With reference to the Twenty–Sixth Amendment, S.Rep. No. 26, 92nd Cong., 1st Sess. 12 (1971) noted:

"Forcing young voters to undertake special burdens–obtaining absentee ballots, or traveling to one centralized location in each city, for example–in order to exercise their right to vote would serve to dissuade them from participating in the election. This result, and the election procedures that create it, are at least inconsistent with the purpose of the Voting Rights Act, which sought to encourage greater political participation on the part of the young; such segregation might even amount

to a denial of their 14th amendment right of equal protection of the laws in the exercise of the franchise."

**6.** Similar difficulties attend plaintiffs' argument that the student registration scheme is violative of 42 U.S.C. § 1973bb. That provision authorizes the Attorney General to institute actions against states or political subdivisions to implement and enforce the 26th Amendment. For the reasons stated above, this Court need not decide whether a private cause of action exists under § 1973bb.

(A) in determining whether any individual is qualified under State law or laws to vote in any election, apply any standard, practice, or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote.

In *Rockefeller v. Ramey, supra,* the Court concluded that the statute now codified as § 5–104 of the Election Law was not subject to attack under § 1971. In reaching that conclusion the Court observed that § 1971 was enacted as part of Title I of the Civil Rights Act of 1964, which in turn was designed generally to remedy racial discrimination in state registration and voting procedures. *Id.* at 786. Noting that plaintiffs in that case had not uncovered any legislative history suggesting a Congressional intention to give § 1971 a scope broader than the rest of the statute, the *Ramey* Court went on to observe that when the Supreme Court in *Carrington* gave apparent approval to Texas' provisions for special scrutiny of the residency of students, "it presumably was aware of the 1964 statute." *Id.,* 348 F.Supp. at 787.

Other courts, however, have divided on the question whether allegations of racial discrimination are prerequisites for a claim under § 1971(a)(2)(A). *Compare Frazier v. Callicutt, supra,* 383 F.Supp. at 20 (in a proper case § 1971 may be applied to prohibit discrimination on non–racial as well as racial grounds); *Ball v. Brown,* 450 F.Supp. 4 (N.D.Ohio 1977); *Shivelhood v. Davis, supra,* 336 F.Supp. at 1115; *Sloane v. Smith,* 351 F.Supp. 1299, 1305 (M.D.Pa.1972) with *United States v. South Dakota,* 491 F.Supp. 1349 (D.S.D.1980) (§ 1971 deemed inapplicable to state residency policy absent proof of racial motivation), and *O'Neal v. Gresham,* 519 F.2d 803, 805 n.2 (4th Cir. 1975).

■ In light of the foregoing division of authority on the requisite elements of a § 1971 claim, this Court is not persuaded that the Supreme Court's *dictum* in *Carrington* should be read to have decided the question *sub silentio.* Moreover, plaintiffs in this case allege that the legislative histo-

ry of the Voting Rights Act can be read to support a broad construction of § 1971. In any event, the Court finds it unnecessary to resolve that issue at this time since, as noted above, the Fourteenth Amendment protects the right of all qualified citizens to vote in state and federal elections, and action under color of state law which allegedly subjects students to discriminatory registration requirements will support a § 1983 action.

■ The State defendants' further suggestion that they are not proper parties to this action for declaratory and injunctive relief from the operation of an allegedly unconstitutional statutory scheme is without merit. *See Project Release v. Prevost,* 463 F.Supp. 1033, 1036–37 (E.D.N.Y.1978).

■ The Court believes that this suit may properly be maintained as a class action pursuant to Fed.R.Civ.P. 23(b)(2). The Court also believes that the class should be limited to those students who reside in Albany County, New York, who desire to register and vote in Albany County.

## III. REQUEST FOR PRELIMINARY INJUNCTION

Before a preliminary injunction may issue, "there must be a showing of possible irreparable injury *and* either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief." *Buffalo Courier–Express, Inc. v. Buffalo Evening News,* 601 F.2d 48, 54 (2d Cir. 1979) quoting from *Caulfield v. Board of Education of City of New York,* 583 F.2d 605, 610 (2d Cir. 1978); *accord, Union Carbide Agricultural Prod. Co., Inc. v. Costle,* 632 F.2d 1014 at 1017 (2d Cir. 1980).

■ The Court is satisfied that the basic prerequisite for preliminary relief–irreparable harm–is met in this case. A discriminatory interference with the exercise of a constitutional right, here the fundamental right to vote, is plainly "an injury for which

a monetary award cannot be adequate compensation." *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). If these students are unable to exercise their right to choose on the same basis as all other citizens, there is no way for that deprivation to be redressed. And as the Fall 1980 elections are now imminent, the threatened injury is neither remote nor speculative.

Defendants contend, however, that there is no possibility of irreparable harm because adequate remedies exist under § 16–108 of the N.Y. Election Law to contest the decisions of the Albany County Board of Elections. This argument is wide of the mark since § 16–108 proceedings are not designed to effect the prompt vindication of the asserted constitutional right of students to be treated in the same fashion as other applicants for voter registration. *See Cesar v. Onon. Cty. Bd. of Elec., supra,* 389 N.Y.S.2d at 59–60 (in proceeding under former § 331 for judicial review of County Board's denial of student registration applications, the Court ordered that students be registered but declined to address constitutional challenge to allegedly discriminatory and inappropriate registration procedures under former § 151).

As the foregoing discussion of the "substantiality requirement" demonstrates, the Court is persuaded that this lawsuit raises sufficiently "serious questions going to the merits which warrant further investigation and trial." *Gulf & Western Indus., Inc. v. Great A & P Tea Co., Inc.*, 476 F.2d 687, 692 (2d Cir. 1973). Plaintiffs claim, and defendants concede, that prospective student voters are accorded different treatment in the registration process than non–student applicants. Defendants have attempted to justify this disparate treatment with the argument that the same substantive standard for determining bona fide residency is applied to all applicants. But as the Fifth Circuit observed in *Whatley, supra,* 482 F.2d at 1232: "It does not follow, however, that because [state law] applies the same substantive standard to students as is applied to other prospective voters, the statute does not create a distinct class for purposes of equal protection analysis." By

automatically subjecting students to a more extensive line of inquiry on the ground that their physical presence in the place where they spend the greater part if not all of the year is to be deemed evidence of a temporary residence, *Palla, supra,* the New York scheme appears inconsistent with the "present intention" focus required under *Ramey.*

The right to vote is a fundamental right which preserves and gives meaning to other basic rights. *Reynolds v. Sims,* 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964). "Any unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government." *Kramer v. Union Free School District,* 395 U.S. 621, 626, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583 (1969). Those Courts which have examined the question in recent years have uniformly found statutory schemes and practices similar to those challenged in this case to be inappropriate, unevenly applied and unnecessary to promote a compelling state interest. *Baesler, supra; Shivelhood, supra, Sloane, supra; Frazier, supra; Whatley, supra, Worden, supra,* and *U. S. v. Texas, supra.*

Indeed, were it not for defendants' contention that neither the New York statutory scheme nor its application by the County Board is subject to close constitutional scrutiny because neither operates in effect as a presumption of student nonresidency, the Court would be inclined to find that plaintiffs have demonstrated a likelihood of success on the merits and are entitled to preliminary relief on that ground. However, a final determination of this issue must await a complete development of the facts concerning the actual operation of New York's student registration practices. *See Palla, supra,* 334 N.Y.S.2d at 868, 286 N.E.2d at 253 (By its terms and in its effects, New York's statutory scheme "raises no presumption for or against student residency . . ."); *but see Ramey, supra,* 348 F.Supp. at 786 (New York's statutory scheme operates precisely like the Texas statute's presumption of student nonresidency). It is clear, however, that the issue presents a

substantial question of federal constitutional, rather than state law. Similarly, plaintiffs' claims under the Twenty–Sixth Amendment and 42 U.S.C. §§ 1971, 1973 warrant further investigation.

■ The question remains whether the balance of hardships tips decidedly in favor of the plaintiffs. While the inadequacy of monetary damages is pertinent to this inquiry, plaintiffs must also show "real hardship from the denial of relief *pendente lite.*" *Buffalo Courier–Express, supra,* 601 F.2d at 58. And in gauging the balance of hardships the Court must consider the impact any preliminary relief will have on the public interest.[7]

Plaintiffs have adequately demonstrated real hardship. With the Fall 1980 elections only a few weeks away, the hardship in being denied registration is plain. Two of the named plaintiffs, Stephen Schrieber and Robert Weber, allege that they are currently unable to register in any county other than Albany County, with the result that they are effectively disenfranchised. Complaint, "Background", ¶ 8; "Parties"; ¶¶ 5, 8; Exhibit H (Affidavits of Stephen Schrieber and Robert Weber). Others of the named plaintiffs, in common with other class members, may be able to vote by absentee ballot or travel to their former voting residence, if any, on Election Day. While the hardship which attends these possible alternatives is not insignificant, the determinative hardship demonstrated on this record is that without some form of preliminary relief, these students will be denied any voice in the selection of public officials and the questions of public importance affecting the community in which they reside and with which they are most

closely tied. *See Shivelhood, supra,* 336 F.Supp. at 1116.

■ The County defendants contend, however, that any injunctive relief would interfere with their duty to insure that all applicants are bona fide residents and would result in a dilution of the vote of "duly registered voters of Albany County". This argument is unpersuasive. Defendants have advanced no reason, and the Court can think of none, why it should not be presumed that student applicants, like any other applicant for voter registration, have made their applications in good faith. On the present record, the state's interest in protecting the purity of the ballot can be adequately served without requiring students to go to greater lengths than other applicants in registering to vote, absent independent evidence of fraud or bad faith.

Finally, there is a clear public interest in insuring that students who meet the age and durational residency requirements are given the same opportunity to exercise the franchise in the 1980 elections as other citizens. In this case, a proper form of injunctive relief will prevent the course of outside events from rendering futile any final vindication of plaintiffs' constitutional rights.

■ It is not the function of a Federal Court to review the registration applications of each class member and determine who may and may not be allowed to vote in the upcoming elections. Nevertheless, in view of the short time remaining before the upcoming elections and the considerable evidence now before the Court concerning the eleven named plaintiffs, it is appropriate in this case for this Court to order their registration forthwith. *See Shivelhood, supra,* 336 F.Supp. at 1114.[8]

---

7. In *Union Carbide Agricultural Products, supra,* the Second Circuit cautioned that, "(w)hen Congress authorizes or mandates governmental action that is in the public interest, more than a 'fair ground for litigation' must be shown before the action will be stopped in its tracks by court order." At 1018. In this case, however, the national policy and mandate embodied in the Fourteenth and Twenty–Sixth Amendments is to encourage active participation by America's youth in local, state and national elections and to insure that they are able to participate on equal terms with other citizens. Clearly

this mandate is as strong today as it has ever been.

8. The affidavits submitted by plaintiffs Amy Auerbach and Monica Rossi are representative in this regard. Amy Auerbach is a Junior at SUNY at Albany and has lived at 669 Myrtle Avenue in Albany, New York, since June, 1979. She maintains a local bank account, finances her education with loans and earnings; is currently employed in Albany; visits her parents occasionally during vacations from her employment and school; and has lived independently

Accordingly, the defendants County Commissioners are preliminarily enjoined as follows:

1. From refusing to place the names of Amy Auerbach, Barbara Shapiro, Andrea Digregorio, Monica Rossi, Mary Ellen Scarpone, Stephen Schreiber, Sharon Sonner, Carrie Newman, Robert Weber, Louis Esbin and Alan Frutkin on the master list of registered voters for Albany County by the date the list is to be completed for the November 4, 1980, elections;

2. From refusing to place on the master list of registered voters for Albany County the names of all those students physically residing in Albany County whose applications to register to vote were denied by the County Board on or after January 1, 1980, unless the applications of those students are reconsidered, in accordance with this opinion and without reference to any questions contained on the questionnaire (Appendix A) that were not asked of all other applicants, at a meeting or meetings of the Board in time for the applicants to be placed on the master registration list for the November 4, 1980, election;

3. From requiring any additional documentation from any student beyond that required of all other applicants unless defendants have reasonable grounds on which to base a belief that the individual applicant's claim of residency is untrue;

4. From adopting or pursuing any registration policy or practice, on the special registration days to be held on October 10th and 11th, 1980, or on any further special registration days which the defendant Commissioners may deem necessary to permit other students to register to vote, that directly or indirectly discriminates against students or that requires students to do anything more than is required of other applicants.

IT IS SO ORDERED.

## APPENDIX A

NAME OF REGISTRANT _____

ADDRESS _____

1. How long have you resided at above address?  Years _____  Months _____

2. How many rooms in this apartment? _____.

3. Does anyone else reside with you? _____. If yes how many? _____.

4. Do you have a lease? _____. If yes with whom? _____

5. Where did you reside before? _____

6. Are you married? _____. If yes how long? _____. Does your Spouse reside with you? _____.

7. Are you employed? _____. If yes where? _____

8. Are you a student? _____. If yes where? _____ Year of anticipated graduation _____.

9. What address is given on the records of the institution of learning? _____ _____

10. Do you receive financial help from your parents? _____.

11. If no, how do you finance your education? _____ _____

from her parents since August, 1977. She considers Albany County the center of her daily life and she has no other residence. Complaint, Exhibit G.

Plaintiff Monica Rossi lives in a dormitory on the SUNY at Albany campus. She is currently employed by the University; spent last summer in Albany; maintains a local bank account; and pays for her expenses and tuition through financial aid and personal earnings. She also considers Albany County to be her only home and the center of her domestic, educational, social and civic life. Complaint, Exhibit L.

Others of the named plaintiffs do receive financial assistance from their parents and not all of the named plaintiffs are gainfully employed. *See* e. g., Complaint, Exhibit M (affidavit of Mary Ellen Scarpone). But these factors, whether considered alone or in combination, are an insufficient basis for refusing to register an applicant to vote. *See Shivelhood, supra,* at 1115.

**1344**

12. Do you remain in Albany County throughout the year? _____.

13. Do you reside with your parents when not pursuing your education? yes _____. no _____.

14. Have you ever been in the Military Service? _____. If yes what address did you use when you were in the Service? _____
_____

15. Have you ever voted? _____. If yes from what address? _____
_____

16. Is there a motor vehicle registered in your name? _____. If so, from what address?
_____

17. Do you have a license to drive a motor vehicle? _____. If so, from what address? _____
_____

18. _____
    SIGNATURE OF REGISTRANT                                          DATE

Exhibit D